SAMUEL AMES *v.* THOMAS R. HAZARD.

If a plea, justifying a libel which contains distinct things, may justify a part only, it will, at all events, be bad on general demurrer, if where the libellous matter be all charged in one count, it do not deny or justify the whole libellous matter so charged, or do not justify all the charges in the libellous matter which it professes to cover.

CASE, for libelling the plaintiff in his office of chief justice of the supreme court, and reporter of its decisions.

The declaration, which consisted of a single count, alleged, in the usual form, the publication by the defendant, of and concerning the plaintiff in his said offices, of the following libellous matter, relating to his connection with, and report of, the suit in equity — *Robert H. Ives* v. *Charles T. Hazard & others* — reported in 4 R. I. Rep. p. 14 : —

" On perusing this report I find it based on a statement of alleged facts, which, whether true or false, are alike entirely foreign to any charges. preferred in the complainant's bill, or legal issues in any manner involved in the case reported upon. At the same time they are so ingeniously interwoven in the text, and apparently sustained by the recognition of points submitted by the counsel for the complainant, that the most wary mind, unacquainted with the real merits of the suit, can scarcely fail of being deceived by their perusal. Indeed so flagitious is the character of the text of this alleged report of the supreme court of this state, that I could not fully persuade myself that it was a genuine document, and on that account delayed commenting on some passages in your communication until I could have access to the 'forthcoming volume' of Rhode Island Reports, some of the contents of which you seem to have enjoyed the privilege of anticipating. My scepticism on this point was a good deal strengthened upon being further assured by eminent counsel that it was impossible that such a report could emanate from a judicial tribunal conversant with the case. I find, however, by reference to the 4th volume of Reports that has at length made its appearance, that the document is genuine, and that the supreme court of Rhode Island

has by some means, or from some cause been induced to sanction and publish in the judicial report of its proceedings, charges of the most infamous character against the defendant, of which he was not accused in the bill, and which are wholly unwarranted and unsupported by any legal allegations or testimony whatever : meaning, that the plaintiff, in his office as reporter of the decisions of the supreme court of Rhode Island, had stated in his report of said suit in equity, facts foreign to the cause of action, and calculated to mislead those not acquainted with the case, as well as charges of the most infamous character against Charles T. Hazard, one of the defendants in said suit in equity, wholly unsupported by any legal allegations in the pleadings, or by any testimony in the case."

" How far the subsequent translation of your senior counsel to the seat of the chief justice of the court, and his appointment as reporter of his decisions, has influenced the language of the published report, remains to be shown ; but I am bold to say that it affords about as pretty a specimen of unprincipled special pleading as can be found upon record : meaning that the plaintiff, influenced by his relation as counsel to said R. H. Ives, had availed himself of his offices as chief justice and reporter as aforesaid, to cause to be made and published an unfair and unjust report of said suit in equity, and in making said report had resorted to unprincipled special pleading."

" What kind of testimony the opinion of the court, as above expressed, is based upon, neither the defendant, C. T. Hazard, nor the public would probably have ever known any more than the victims of the Holy Inquisition in the dark ages knew of the testimony upon which that secret tribunal condemned them to the rack or the stake, were it not that your senior counsel and devoted friend, a citizen of the highest standing in our state, and a man of singular piety and candor, had been elevated to the supreme bench, and reporter of the court's opinions. For this and other kindred favors, allow me to tender him, through you and all truth-seeking citizens of the state, my unfeigned thanks ; meaning by said ironical language, that the plaintiff in his offices aforesaid as chief justice, and being influenced by his former relation of counsel for R. H. Ives, had caused to be

published in his report of said suit in equity, a statement of facts as a basis for the opinion of the court which was not relevant to the case."

" Beginning with your brother's irrelevant deposition, we find the burden of both your opening and closing argument confined to this slanderous accusation, and now that the senior member of your counsel has been translated probably through you and your clique's contrivances to the chief justiceship of the supreme court and reporter of its decisions, we find this same atrocious libel foisted into the text of the opinion of the court, in almost the same words that were used by the chief justice when acting as your counsel : meaning that the plaintiff, in his offices aforesaid, being influenced by his relation of counsel to said R. H. Ives, had caused an atrocious libel and scandalous accusation to be foisted into the report of the decision of the supreme court in said suit in equity."

" Thanks to the circumstances that have compelled you at so early a stage in the contest between might and right to hazard your cause on one and the last cast of the die : for as the great Napoleon never sent his *old guard* into the fight until every other expedient to turn the tide of battle had failed, so I am sure that Robert H. Ives, a greater *tactician* than he in the art of law if not in war, must have exhausted every other means of deception, before he ventured on the audacious expedient of exorcising from the supreme court, a documentary shield for his protection, partaking so far as truth and its judicial character are concerned, of all the elements of a gross forgery. I know that this is a grave charge to prefer against a body of men whose ermine should, from the nature of their office, be pure and unsullied, even from the suspicion of partisan bias, but still I will maintain the charge, and pledge myself to sustain it to the satisfaction of a majority of the legislature of this state if necessary, in spite of all the dust that may be sought to be thrown in their eyes, by the swarm of debauched members of the bar that so generally infest its halls, and who as a body have of late proved themselves to be the abject slaves and lickspittles of wealth and of a self-constituted tribunal, rather than the advocates and supporters of justice and the laws ; but who,

had they a tithe of the honorable sentiment and chivalrous impulses that once distinguished their profession, would rise to a man, and demand the instant and ignominious expulsion from the supreme bench, of the man or men, who have so irreparably disgraced their position and the state, by causing to be inserted in the published judicial records, atrocious calumnies affecting to all time the reputation and standing of a plundered and grossly abused man, alike false in fact and unsupported by a tittle of evidence legally before the court, and which were they true, are wholly inapplicable to the case at issue. This was doubtless the document you relied upon to overawe the deliberations of the committee appointed by the house to report upon the merits of C. T. Hazard's memorial, and the equity powers of the supreme court. We here behold the same old cry of ' breach of trust' thundered into the ears of the committee, under sanction of the authority of a court who have not scrupled to incorporate in the report of their opinion in the case of *Ives* v. *Hazard,* whole sentences bearing unmistakable evidence of having been copied almost verbatim from the arguments of your counsel, or from your own statements, and which it requires nothing but a recurrence to original documents in possession of the court to prove to be grossly *false :* meaning that the plaintiff, in his offices aforesaid, being influenced by the said R. H. Ives, had issued a report of said suit in equity, partaking of all the elements of a gross forgery, and that the plaintiff in his aforesaid offices had disgraced his position by inserting in said report atrocious calumnies affecting to all time the reputation and standing of said Charles T. Hazard, and to convey to the public a favorable but untrue impression of the case of said Ives."

" What next? Ah yes, I understand you, the ' old guard ' is still in reserve — your last appeal as usual is to authority — to *your counsel, law-maker, law administrator, and reporter of his own decisions,* all in one : meaning that the plaintiff, in his offices aforesaid, was ready to act, and did act as the aid and assistant of said R. H. Ives."

" Instead of looking for the truth as they might readily have found it in the original document in their possession, the court

have evidently taken it second hand from your counsel's open-
ing argument (page 7th,) in which the reporter, I mean coun-
sellor, says, (speaking of Hazard's letter,) ' In it after alluding
to a purchase which he just effected as AGENT for Mr. Ives,
from a third person,' &c. : meaning that the plaintiff in his
offices aforesaid of chief justice and reporter, being influenced
by his relation of counsel to the said Robert H. Ives, inserted
in his report of said suit in equity a statement taken from the
argument of counsel and contradicted by original documents
placed before the court, and thereby falsely represented the con-
tents of a certain letter of said Charles T. Hazard, to the injury
of said Hazard."

  " Now the papers of the case show that you not only had
' an interview,' but ' interviews,' and that you likewise employed
agents to have interviews with her, and also that the ' Old
Guard ' sent an agent to have interviews with her before the
issuing of the court's final decree, with positive orders to see if
' a release could be obtained' from (*blank*,) '————  ———— the
wife of the said Charles T. Hazard, in favor of Robert H. Ives,'
and in case ' she should PERSIST in refusing to release the same '
' make an allowance out of the stipulated price for the wife's
dower :' meaning that the plaintiff in his offices aforesaid of
chief justice and reporter, being influenced by his former rela-
tion of counsel to the said Robert H. Ives, had endeavored to
influence by his official position the wife of the said Charles T.
Hazard, and thereby to obtain from her some concession in
favor of his former client, the said Robert H. Ives."

  " There was not a particle of either legal or illegal testimony
before the court to even hang a suspicion upon, that the wife
of Hazard ever consented or offered to sell her rights of dower
in the Peckham farm.    And our self-constituted court of equity
possessed no more legal right to beset her in her husband's
house, with their whipper-ins, in order to compel or intimidate
her into releasing her right of dower in favor of Robert H. Ives,
than the same tribunal has authority to dispatch its presiding
judge on a mission to Buckingham palace to ' examine ' Queen
Victoria, ' and inquire ' whether she will or will not ' consent '
to place the court's dictatorial ambassador at the head of the

criminal bench of her realm on the ground of his fancied resemblance in aspect and disposition to the renowned Jeffreys, and in the event 'she should persist in refusing to (confer) the same,' then, in that case, the alleged descendant of King James' blood- and brandy-swilling chief justice should by virtue of the court's authority compel her royal husband to make 'such an allowance' out of their highness' privy purse as he might think expedient, as a penalty for the persistant obstinacy of his little Queen: meaning that the plaintiff in his office of chief justice used his official position, to intimidate the wife of said Charles T. Hazard and to compel her to release her rights of dower, and that the plaintiff was a cruel and drunken judge, and in action and conduct like Judge Jeffreys, a well-known drunken and infamous English judge of the time of James II., king of Great Britain, England and Ireland."

" At the time the case alluded to was decided, the court was composed of justices Staples, Brayton, Bosworth and Shearman. We think, however, the final decree from some unexplained cause was not issued until after chief justice Staples was superceded by lawyer Ames, who acted as the plaintiff's counsel, the decision therein being pronounced, as far as we can discover, minutely in every particular as it was asked for by lawyer Ames, which probably has led to the misapprehension by the writer in the Transcript: meaning that the plaintiff in his office as chief justice had influenced the final decree of the court in said suit in equity, and had caused and procured an opinion of the court therein in conformity with his argument, while at the bar, by using his influence or authority as chief justice for that purpose."

To this declaration the defendant filed two special pleas, and the general issue.

The first special plea was: " And the said defendant comes and defends the wrong and injury, when, &c., and as to the following alleged libellous matter set forth in the plaintiff's declaration, namely," (here the plea recited the matter alleged in the declaration to be libellous, " On perusing this report," &c., and ending, " my unfeigned thanks,") " the said defendant says, that the plaintiff aforesaid, his action aforesaid, thereof against

him ought not to have or maintain, because he says, that the plaintiff aforesaid, in his capacity of reporter as mentioned in the plaintiff's declaration, in his report of the suit in equity mentioned in said declaration, made a statement in the words and figures following, namely : " (here the plea recited the report of the case, as contained in 4 R. I. Rep. 14, from the beginning down to the statement of the points made by the counsel,) " upon which statement, the report aforesaid was based, and in which report the said plaintiff, in his capacity as reporter as aforesaid, represented and alleged that the facts set forth in said statement formed the basis upon which the report aforesaid, and the decision of the court in which said suit was pending, were based; some of which said alleged facts were entirely foreign to any charges preferred in the bill of complaint mentioned in said declaration, and to any legal issues, in any manner involved in the suit in equity aforesaid ; and which were by the plaintiff, in his said capacity of reporter, so interwoven in the text of said report, and apparently sustained by the recognition of points submitted by the counsel of the complainant in said suit, that persons unacquainted with the real merits of said suit would be likely to be deceived by the perusal thereof: wherefore the said defendant, at Providence, in said county, at the time mentioned in said declaration, composed and published, and caused and procured to be published the alleged libellous matter above set forth, as he lawfully might for the cause aforesaid ; and this he is ready to verify," &c.

The second special plea, as to the same portion of the libellous matter charged in the declaration which was covered by the first plea, alleged, that " the said plaintiff his action aforesaid, thereof against him, the said defendant, ought not to have or maintain, because he saith, that the report mentioned in said declaration made by the plaintiff in his capacity of reporter, as is mentioned in said declaration, contained, among other statements, certain statements of alleged facts, in the words and figures following, that is to say : " (here the plea recited portions of the statement of facts in said report, and a portion of the second point, as stated in said report, taken by the counsel for the complainant as to fraud and surprise,) " upon each and all of

which statements aforesaid, the report aforesaid was based, and each of which said statements was foreign to any charges preferred in the bill in said suit, and to the legal issues involved in the same; and the charges made in and by said statements against the said Charles T. Hazard were in fact wholly unwarranted and unsupported by any legal allegations or testimony in said suit, and in relation to which no accusation was made against him in said bill of complaint, while the said statements were so interwoven in the text of said report, and so apparently sustained by the recognition of points submitted by the counsel for the complainant in said suit, that persons unacquainted with the real merits of said suit would be likely to be deceived by the perusal of said statements. Wherefore the said defendant, at the time mentioned in the plaintiff's declaration, at said Providence, did compose and publish the supposed libellous matter hereinbefore mentioned, which he lawfully might do, for the cause aforesaid; and this he is ready to verify," &c.

To these special pleas the plaintiff demurred, generally, and joined in the general issue.

*Payne*, with whom was *B. R. Curtis*, of Boston, in support of the demurrer.

1. The pleas do not profess to answer the whole declaration.

2. They do not answer that portion of the declaration which they profess to answer. To say that a statement of facts was entirely foreign, &c. [read the plea] is one thing; to say that the same statement is, &c. [read the libel] is quite another thing. Then, that portion of the declaration professedly covered by these pleas contains libellous matter, to which no answer whatever is made by either plea. The defendant cannot be allowed to limit the controversy, and tone down his original slander. If he attempt to do it, the plaintiff, though in fact he knows the plea to be libellous and false, must admit its truth by demurrer, as the only means of compelling the defendant to answer the declaration either by denying that he published the libellous matter, or by admitting the publication, and proving its truth. The justification must be of the specific charge in the declaration, and it must be as broad as that charge is. If it go beside it or fall short of it, it is naught. It must be in point of law identical with it. 1 Am. Leading Cases, 163, and cases

cited; *Edsall* v. *Russell*, 6 Jurist, 996; 2 Har. Dig. 2433–4; *Helsham* v. *Blackwood*, 5 Eng. L. & Eq. 409. To determine whether the matter is libellous, and to ascertain the meaning of any part, the whole written or printed matter of which the alleged libellous passages form a part, may be read in evidence to the court or jury. 1 Am. Leading Cases, 128–136, 142, 148 and cases cited; 2 Starkie on Slander, 85, 320 and cases cited; *Commonwealth* v. *Kneeland*, 20 Pick. 206, 216; *Graves* v. *Waller*, 19 Conn. 90.

*J. M. Blake*, in support of the pleas.

1. The alleged libel contains distinct things; and in such a case the defendant may plead in justification of any of them, and need not justify all. 1 Stark. on Slander, 490; Cooke on Defamation, 119; *Fero* v. *Roscoe*, 4 Comst. 162.

2. The pleas answer the substance and foundation of all that part of the declaration which they profess to answer, and that is sufficient. Cooke on Defamation, 117; 1 Stark. on Slander, 483; *Morrison* v. *Harmer*, 3 Bing. N. C. 759; 32 Eng. Com. L. R. 320; *Edwards* v. *Bell*, 1 Bing. 402; 8 Eng. Com. L. R. 360; 1 Chitty's Plea, 455.

3. If the defendant justify specially, it will not be necessary for him in his plea to deny the innuendoes and epithets contained in the declaration. Stark. on Slander, 476; Cooke on Defamation, 114; *Astley* v. *Younge*, Burr. 807.

4. A plea of justification carries with it a justification of a fair comment upon the facts which it specifies, and whether the comment raises an imputation which may or may not be a just inference therefrom, is a question for the jury. Cooke on Defamation, 123; *Clark* v. *Taylor*, 2 Bing. N. C. 654; 29 Eng. Com. L. R. 445.

BOSWORTH, J. The questions now before us, in this case, arise upon a general demurrer to two special pleas, filed by the defendant. The declaration alleges the publication of a libel by the defendant of and concerning the plaintiff, in his office of reporter of the decisions of the supreme court, and in his office of chief justice of said court.

The pleas filed are special pleas in justification. The causes of demurrer assigned are, that they do not profess to answer the

whole declaration ; and that they do not answer that portion of the declaration which they profess to answer.

The first ground alleged for cause of demurrer is answered by the defendant, by saying, that the alleged libel contains distinct things ; and that, in such case, the defendant may plead in justification of any of them, and need not justify all. The authorities cited by the defendant seem to sustain him in this position ; although their legal soundness is denied by several eminent judges in this country, and the decisions of courts of high authority are based upon a precisely opposite doctrine. In *Sterling* v. *Sherwood,* 20 Johns. Rep. 206, Chief Justice Spencer, in reference to the position on this subject laid down by Mr. Chitty in his 1st vol. of Pleading, and by Sergeant Williams, (Saunders 1, 28, n. 3), says, that it is not law; and that the cases referred to in support of it, do not bear out the proposition ; and there are several cases which are directly opposed to it. He says, that the true rule is laid down by Kent, J. in *Riggs* v. *Dennison,* 3 Johns. Cases, 205, thus : " That as the plea did not, either by denying or justifying, meet the whole matter or gravamen contained in the count, it was for that reason bad. In a note to the text of Chitty on Pleading, 7th American edition, vol. 1, p. 555, it is stated, that in England, if a plea begin as an answer only to a part of the declaration, and is in truth only an answer to part, the plaintiff must take judgment of the part unanswered as by *nil dicit.* Here a general demurrer to such plea is sustained. This is a fatal defect." So it was decided in *Sterling* v. *Sherwood,* before referred to, and in several other cases quoted in the note to Chitty.

On the ground of the second alleged cause for demurrer, we think the pleas in this case are certainly bad. That a plea in bar must answer that portion of the declaration which it professes to answer, is a rule not controverted. The rules of pleading, in a case of libel or slander, require that a plea of justification must contain a specific charge, set forth with certainty and particularity; and that the plea must be as extensive as the imputation complained of in the declaration. In order to determine what is the extent of the imputation, we must look at the whole language which the plea professes to justify.

Ames *v.* Hazard.

If a plea justify everything that is essential, it will be a good answer; but if it justify that part of the alleged libellous matter which is comparatively unessential, leaving out that part which gives a sting to the whole, it must certainly be adjudged bad. Upon examination of the declaration in this case we are of opinion, that the substance of the libellous matter set out in the declaration is unanswered by the pleas. The substance of the libel charged, is, as we think no one could fail to gather from a perusal of it, that the plaintiff who had been counsel of Robert H. Ives in the case of *Ives* v. *Hazard*, had in his capacity of reporter, after he had been promoted to the office of chief justice of the court, with the purpose of benefiting his former client, and injuring the defendant in the case, made an irrelevant statement of the case, calculated to deceive; and in making the report had resorted to unprincipled special pleading; making infamous accusations against the defendant Charles T. Hazard, unsupported by allegations in the bill or by legal proof in the cause; that the text of the report was flagitious in its character, and that the plaintiff had prostituted his offices to the baseness of those purposes and acts. This we understand to be the fair import of that part of the libellous matter set out in the declaration which these pleas profess to answer. The first plea sets out the statement of facts as published in the 4th vol. of R. I. Reports, and alleges that some of the statements therein are foreign to the charges in the bill or the legal issues in the cause, and are so interwoven in the text, and apparently sustained by points made by the counsel of the plaintiff, that persons unacquainted with the case are likely to be deceived by their perusal. This answer comes very far short of an answer to the charge made. The charge of unprincipled special pleading, of making a flagitious report, of making infamous accusations, is a very different matter from that of making some irrelevant statements so interwoven in the text as that those unacquainted with the merits of the case would be likely to be deceived by a perusal of them. The one might naturally be the result of inadvertence or carelessness, or might be a true report of a trial; the other imports malice of purpose and baseness of conduct. The second plea differs from

the first in reciting, in addition to the statement of facts, some of the points made by counsel in the case, and alleging that each and all of the statements therein are of the nature set out in the first plea, and that all of the charges made in and by said statements against said Charles T. Hazard, were unsupported and unwarranted by any legal allegations or testimony in said suit. No charges against the said Charles T. Hazard are particularized, nor does the plea state that there are any of a character such as the libellous matter imports.

In both pleas the most disgraceful part of the alleged libellous matter is entirely unnoticed. If the matter stated in them can be proved to be true, and if they can be adjudged a sufficient answer, the result would establish, that a man might make a statement of another and so characterize it as to make it import the deepest criminality, and then, by pleading the truth of the statement without its criminal character, shield himself from all liability. In effect such a mode of justification would enable a defendant to a charge of libel, to say to the plaintiff, " true, I published what you charge me with publishing, but a part of it is true, and therefore I am justified of the whole."

*For these reasons the demurrer must be sustained and the pleas overruled.*